# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| JUNCTION SOLUTIONS, LLC f/k/a<br>JUNCTION MANAGEMENT SOLUTIONS,<br>LLC, a Delaware Limited Liability Company, | ) <br> ) <br> ) <br> ) | |
| Plaintiff, | ) <br> ) | No. 06 C 1632 |
| v. | ) <br> ) | Hon. Joan B. Gottschall |
| MBS DEV, Inc., a Colorado Corporation,<br>JEFFREY ERNEST, MITCH TUCKER, and<br>KENNETH R. PAUL, Individuals, | ) <br> ) <br> ) <br> ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Junction Solutions LLC ("Junction") sued defendants MBS DEV, Inc. ("MBS"), Jeffrey Ernest ("Ernest"), Mitch Tucker ("Tucker"), and Kenneth R. Paul ("Paul") in Cook County Circuit Court. The complaint alleged violation of the Illinois Trade Secrets Act, 765 ILCS 1065/1 *et seq*. ("ITSA") (Count II), violation of the parties' Confidentiality Agreement (Count III), breach of the parties' Employment Agreement (Count IV), "tortious interference with a contract" (Count V), and intentional interference with prospective economic advantage (Count VI).[1] The defendants subsequently removed the case to this court and have now moved to dismiss the suit for lack of venue. At the same time, Junction has moved to remand the case to the Cook County Circuit Court. For the reasons explained below, the defendants' motion to dismiss for lack of venue is denied, and

---

[1] In addition to the above-listed causes of action, Count I of the complaint seeks preliminary and permanent injunctive relief. Counts I, II, and VI are alleged against all defendants; Counts III and IV are alleged only against Ernest, Tucker, and Paul. Count V is alleged only against MBS.

Junction's motion to remand also is denied.

**BACKGROUND**

Junction is a provider of software and information technology consulting services for businesses. Among its software applications is the "Junction Multi-Channel Distribution Software" ("JMCD Software"), which allows businesses to increase the utility of certain software applications created by Microsoft. Defendants Ernest, Tucker, and Paul are former Junction employees who helped develop the JMCD Software. When they were hired, the defendants signed confidentiality and employment agreements under which they pledged, among other things, to protect Junction's trade secrets from disclosure to third parties. After helping to create the JMCD Software, however, they abruptly left Junction to begin working for MBS, a competing business software and consulting company started by other former Junction employees. MBS then began marketing a product which Junction claims is identical to its own JMCD Software. Junction claimed that the defendants used its intellectual property and trade secrets in developing MBS's product.

In November 2004, Junction sued MBS in the United States District Court for the District of Colorado. *Junction Management Solutions, LLC v. MBS DEV, Inc.*, 04-cv-02288-PSW-MJW (D. Colo. filed Nov. 3, 2004) ("the Colorado suit"). The complaint alleged violation of the ITSA, breach of certain employment agreements, breach of fiduciary duty, inducing a breach of fiduciary duty, intentional interference with contractual relations, intentional interference with prospective business relations and prospective clients, and violation of the Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq*. In December 2004, after Junction's motion for a preliminary injunction was denied, the parties reached a settlement agreement. Although Ernest, Tucker, and Paul were not originally named as defendants in the suit, they were parties to the Settlement Agreement and as

such reaffirmed the pledges made in their Confidentiality and Employment Agreements not to disclose confidential and proprietary Junction information to third parties.

In February 2006, Junction learned that MBS had entered into a partnership with Iteration2, a California corporation, and that MBS and Iteration2 were planning to market a multi-channel distribution software product similar to Junction's JMCD software. On March 14, 2006, Junction filed the instant suit in the Circuit Court of Cook County. The defendants later removed the suit to this court, and now argue that the case must be dismissed for improper venue pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure. Specifically, the defendants claim that the Settlement Agreement resulting from the Colorado suit requires the present litigation to be brought in the District of Colorado. For its part, Junction argues that forum selection clauses in the Confidentiality Agreement and Employment Agreement signed by the defendants require that the case be remanded to the Circuit Court of Cook County. The court considers each issue in turn.

## DISCUSSION

### I.  Defendants' Motion to Dismiss for Improper Venue

The defendants' sole argument for dismissal under Rule 12(b)(3) is that the Settlement Agreement reached in connection with the Colorado suit contained a clause requiring any claim arising under the Agreement to be brought in the United States District Court located in Denver, Colorado. Paragraph 19 of the Settlement Agreement provides:

> Exclusive Venue. The parties agree that the exclusive jurisdiction and venue with respect to any claim or cause of action arising under this Agreement shall be the Federal court located in the City of Denver, Colorado . . . . The parties hereto each waive any objection based on forum non conveniens and waive any objection to venue of any action instituted hereunder.

Settlement Agreement ¶ 19.

In response, Junction argues that the Settlement Agreement does not apply to the present action. Specifically, Junction points to paragraphs 5(a) and 5(b) of the Agreement, which provide that the Agreement covers only claims existing up to the Agreement's effective date of December 8, 2004.[2] According to Junction, the conduct at issue in the present litigation took place after the Settlement Agreement's effective date and hence is not subject to the Agreement or its venue provision. In further support of its contention that the current suit is not subject to the Settlement Agreement, Junction notes that its current claims are brought against different defendants – Ernest, Tucker, and Paul – than those sued in the Colorado action, and that the current claims differ from those brought in the Colorado case.

The question whether the current suit is subject to the parties' earlier Settlement Agreement has been directly addressed by Judge Phillip S. Figa, who presided over the Colorado litigation and who retained limited jurisdiction over the case for the purpose of enforcing the Agreement. After

---

[2] In relevant part, the paragraphs state:

    5.   <u>Release</u>.  (a) For good and valuable consideration . . . the parties . . . hereby fully and finally release, acquit and forever waive and discharge each other . . . from any and all Claims (as herein defined) which each or any of the parties now have, may now have, or which may exist or claim to exist or relate to or arise from matters occurring at any time in the past until and including the Effective Date against each other, or any of them, including but not limited to any Claims which relate to or arise out of any of the Lawsuit . . . the Employment Agreements . . . and the Confidentiality Agreements . . . . The parties acknowledge that they intend to release all such Claims as set forth in this Section 5(a) through the Effective Date and that the consideration stated herein is sufficient therefor.
    (b)   Notwithstanding any other provision of this Agreement to the contrary, Section 5(a) hereof shall not apply to any and all Claims arising out of or relating to: (i) the enforcement of the express terms of this Agreement and the agreements and provisions referenced herein which survive the Effective Date, and (ii) any other matter arising after the Effective Date.

Settlement Agreement ¶¶ 5(a), 5(b). The Settlement Agreement defines December 8, 2004 as the effective date.

filing their motion to dismiss in this court, the defendants filed an action before Judge Figa in the Colorado District Court seeking a declaratory judgment that they were in compliance with the Settlement Agreement and claiming that Junction had breached the Agreement by failing to bring its current claims in the District of Colorado. Judge Figa dismissed the defendants' claims, agreeing with Junction that the instant action was not covered by the Settlement Agreement. During a May 23, 2006 oral hearing on the motion, Judge Figa explained:

> I understand the crux of the defendants' and Mr. Ernest, Mr. Tucker and Mr. Paul's motions, but I just don't find them to be meritorious to justify the Court's retention of jurisdiction in this case and the prohibition of the plaintiff to pursue its case in Illinois. It may well be that they have very good defenses because of this.
> I am not pre-disposing the dispute. It may well be that the settlement agreement provides an absolute defense that extinguishes some or all of the obligations that those defendants have to the plaintiff based on alleged violations of Illinois statutory or common law. Or it may well be that there is other law that applies based on conflicts of law principles.
> But I don't see the venue provision [in] paragraph 12 foreclosing the Illinois case on the basis of Colorado or the District of Colorado providing exclusive venue, because there is no claim or cause of action arising under this agreement. I see this agreement allowing the continuation or the non-extinguishment of those confidentiality obligations.
> And to the extent that this agreement says explicitly or implicitly that those obligations continue, I don't see them as constituting a new contractual obligation under this settlement agreement. And I don't, therefore, consider this to be part – those ongoing obligations as being – arising under this agreement.
> They are simply allowed to survive under this agreement, and I don't see them as substantive provisions of this agreement such that one side or the other can sue for breach of this agreement. And I certainly understand that the plaintiff in Illinois is not suing under this agreement.
> So I have to find that the defendants'. . . motion to enforce settlement agreement and release is denied.

Transcript of Oral Argument at 22:1-24:5.

Under the doctrine of collateral estoppel, Judge Figa's decision bars relitigation of the question whether Junction's current claims arise under the Settlement Agreement. Collateral estoppel applies where four elements are met: (1) the party against whom collateral estoppel is

asserted must have been fully represented in the prior litigation; (2) the issue sought to be precluded must be identical to an issue involved in the prior litigation; (3) the issue must have been actually litigated and decided on the merits in the prior litigation; and (4) the resolution of that issue must have been necessary to the court's judgment. *See, e.g.*, *Little v. Tapscott*, No. 01 C 9738, 2002 WL 1632519, at *7 (N.D. Ill. July 23, 2002).

All of these elements are present here: first, all of the defendants in the present litigation were fully represented when the issue was raised before Judge Figa. Indeed, defense counsel at the hearing specifically stated that he represented MBS as well as Ernest, Tucker, and Paul. Transcript of Oral Argument at 1:10-11. Second, the issue decided by Judge Figa – whether Junction's claims are subject to the Settlement Agreement – is identical to the issue raised by the defendants here. Third, as the passage quoted above clearly illustrates, Judge Figa's decision was on the merits; and fourth, resolution of the issue was necessary to Judge Figa's ruling on the earlier motion.

Defendants nonetheless argue that Judge Figa's ruling is not fatal to their present motion to dismiss for improper venue. Specifically, they seize on language from the May 23 hearing in which Judge Figa wondered aloud:

> Can't Judge Gottschall make that determination herself; that this is really the second filed case, the first being the original one that we all – or at least some of us thought was terminated, but and then leave it to me? And shouldn't I at least allow her to make the decision whether the case should be transferred or whether it is subsumed by the settlement agreement in this case?

Transcript of Oral Argument at 15:16-23. Defendants also point to Judge Figa's remark that he was "not predisposing the dispute" as evidence of his intention to allow this court to make its own determination regarding the significance of the Settlement Agreement's venue provision.

This line of argument is simply implausible. In the passage cited by the defendants, Judge

Figa merely asks questions; he does not articulate any statement, much less any holding, that the issues in question should be resolved by this court. Moreover, the portion of the transcript in which these ruminations appear comes well before Judge Figa's unequivocal ruling at the end of the hearing that the current suit is not covered by the Settlement Agreement and that the Agreement's venue provision does not bar the current suit.

In short, given Judge Figa's ruling that Junction's current suit asserts no claim or cause of action under the Settlement Agreement, and indeed his explicit recognition that the Agreement's venue provision is inapplicable here, the defendants' argument based on the Agreement and its venue provision fails. Since the Settlement Agreement's venue provision was the only basis for the defendants' motion to dismiss, their motion is denied.

## II. Junction's Motion to Remand

The court next considers Junction's motion to remand this litigation to the Cook County Circuit Court. As the basis for its motion, Junction cites a forum selection clause in the Employment Agreement under which it has purported to bring suit against Ernest, Tucker, and Paul.[3] The forum selection clause provides: "This agreement shall be governed by the laws of the state of Illinois. The Circuit Court of Cook County, Illinois shall have jurisdiction over any dispute . . . which arises

---

[3] The court notes that the Confidentiality Agreement also contains a forum selection clause, which states: "The parties submit to the jurisdiction and venue of the state and federal courts located in Cook County, Illinois, of the United States of America for any legal action or proceeding and for the resolution of any dispute in connection with this agreement." Confidentiality Agreement ¶ 5. Defendants rightly point out that the Confidentiality Agreement's provision, which allows for jurisdiction in *both* the state and federal courts of Cook County, plainly does not require litigation in state court. Hence, the Confidentiality Agreement in no way bars the defendants' removal to this court and *a fortiori* does not require remand. As a result, the court's analysis in what follows centers only on the forum selection clause contained in the Employee Agreement.

under this agreement, and each of the parties shall submit and hereby consents to such court's exercise of jurisdiction." Employment Agreement ¶ 10(b).

Against this, the defendants contend that the forum selection clause was extinguished by the Settlement Agreement and hence does not control here. The court agrees. Paragraph 7 of the Settlement Agreement, in relevant part, provides that "each of Ernest, Tucker and Paul affirm to the Company their confidentiality obligations under paragraph 7 of their Employment Agreements and paragraphs 3.1 of their Confidentiality Agreements, which provisions survive the termination of employment and the execution and delivery of this Agreement." Settlement Agreement ¶ 7. As an initial matter, accepting Junction's contention that the Employment Agreement *in toto* survives the Settlement Agreement would render superfluous the Settlement Agreement's specific provision for the survival of the Employment Agreement's confidentiality obligations. *See, e.g.*, *Wojcik v. Aetna Life Ins. and Annuities Co.*, 916 F. Supp. 729, 733 (N.D. Ill. 1996) (noting the "familiar interpretive principle that language of a contract should be read in harmony and in such a manner so as to avoid rendering any language superfluous or meaningless").

That the Employment Agreement's forum selection clause does not survive is even clearer when paragraph 7 of the Settlement Agreement is read in conjunction with paragraph 12, which provides:

> Binding Effect; Successors and Assigns; Entire Agreement . . . . This Agreement, together with the agreements (or portions thereof) incorporated herein by reference or which expressly survive the Effective Date, and any agreements or instruments delivered hereunder, contains and sets forth the entire agreement between the parties from and after the date hereof and supersedes any and all prior agreements from and after the date hereof, except as expressly provided in this Agreement. Any and all prior agreements, understandings, promises, conditions or representations between the parties not contained herein or expressly incorporated herein shall be superseded hereby and shall not be binding or enforceable upon any of the parties. This Agreement shall not be modified except in writing by the parties hereto.

Settlement Agreement ¶ 12. The only aspects of the Employment Agreement that expressly survive the Settlement Agreement are the confidentiality obligations specified in paragraph 7 of the Settlement Agreement. Under paragraph 12, therefore, the remaining portions of the Employment Agreement are superseded.

Junction points to various provisions of the Settlement Agreement in an attempt to show that Employment Agreement was intended to remain intact after the Settlement Agreement. As a general matter, for example, Junction notes that paragraphs 12 and 22[4] contemplate the continuation of other agreements between the parties. Junction further notes that the Employment and Confidentiality Agreements are specifically referenced in Paragraphs 1 and 5(a) of the Settlement Agreement. This, Junction maintains, demonstrates that the Employee and Confidentiality Agreements are incorporated in their entirety as separately enforceable agreements in the Settlement Agreement.

This argument embodies multiple *non sequiturs*. First, from the fact that the Settlement Agreement apparently contemplates the continuation of other agreements between the parties, it does not follow that the Settlement Agreement specifically contemplated the continuation of the Employment and Confidentiality Agreements. Similarly, from the fact that the Employment and Confidentiality Agreements are referred to in the Settlement Agreement, it does not follow that the

---

[4] Similarly, paragraph 22, the final provision of the Settlement Agreement, states: <u>Entire Agreement</u>. This Agreement together with the documents and provisions referenced herein as incorporated by reference or expressly stated to survive the termination of Defendants or Ernest, Tucker or Paul's employment and/or employment/letter agreements or other contracts with the Company represent the entire agreement between the parties regarding the subject matter hereof and supersedes all prior agreements, representations, and understandings (written and oral) between the parties concerning the subject matter hereof.
Settlement Agreement ¶ 22.

former agreements were intended to be incorporated into the Settlement Agreement, still less that they were intended to be incorporated into the Settlement Agreement in their entirety or to be separately enforceable. Junction can point to no provision of the Settlement Agreement specifically stating that either the Confidentiality or the Employment Agreement, or their forum selection clauses, survives the Settlement Agreement. Nor has Junction cited any authority or legal principle on the basis of which the court might arrive at such an interpretation of the Settlement Agreement.

It is true that the Employment and Confidentiality Agreements are mentioned in the Settlement Agreement's "recitals,"[5] and that paragraph 1 of the Settlement Agreement states that the "above recitals are, and shall be construed to be, an integral part of this Agreement." Settlement Agreement ¶ 1. That the recitals are integral to the Settlement Agreement, however, does not mean that any document or agreement mentioned in the recitals is therefore incorporated in the Settlement Agreement in its entirety.

Junction also cites paragraph 5(a) of the Settlement Agreement, under which the parties agree to release, *inter alia*, any claim that the Employment or Confidentiality Agreements are unenforceable. Settlement Agreement ¶ 5(a). According to Junction, this shows that the parties contemplated Junction's right to enforce the latter agreements in the future. But far from contemplating the survival of the agreements beyond the Settlement Agreement, paragraph 5(a) itself states that the claims in question are released only through the Settlement Agreement's

---

[5] In particular, the fourth recital states:
> WHEREAS, Jeff Ernest ("Ernest"), Mitch Tucker ("Tucker") and Ken Paul ("Paul"...) Each entered into a Confidentiality Agreement and an Employee Agreement with the Company (hereinafter referred to as the "Confidentiality Agreement" and the "Employee Agreement").

Settlement Agreement at 1.

effective date of December 8, 2004.

The Settlement Agreement is far from a model of clarity and each side can marshal at least a colorable argument in support of its position. However, the Settlement Agreement is most reasonably interpreted as contemplating the survival only of the provisions of the Employment Agreement specifically referenced in the Settlement Agreement. Since the Settlement Agreement nowhere indicates the survival of the forum selection clause, the court rejects Junction's contention that the clause requires remand of this case to the Circuit Court of Cook County; and since the forum selection clause served as the sole basis for Junction's motion to remand, Junction's motion must be denied.

## CONCLUSION

For the reasons set forth above, the defendants' motion to dismiss is denied and Junction's motion to remand is denied.

ENTER:

__/s/_____
Joan B. Gottschall
United States District Judge

Dated: January 9, 2007