UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JUNCTION SOLUTIONS, LLC,            )
                                    )
        Plaintiff,                  )   No. 06 C 1632
                                    )
    v.                              )   Judge Joan B. Gottschall
                                    )
MBS DEV, Inc., JEFFREY ERNEST,      )
MITCH TUCKER, and KENNETH R. PAUL,  )
                                    )
        Defendants.                 )

## MEMORANDUM OPINION & ORDER

Junction Solutions, LLC ("Junction") sued defendants MBS Dev, Inc. ("MBS"), Jeffrey Ernest ("Ernest"), Mitch Tucker ("Tucker"), and Kenneth Paul ("Paul") in Cook County Circuit Court, alleging, *inter alia*, violations of the Illinois Trade Secrets Act, confidentiality agreements and employment agreements. The case was removed to this court and defendants filed their answer and a seven-count counterclaim. Before the court is Junction's motion to dismiss that counterclaim. For the reasons set forth below, Junction's motion is granted in part and denied in part.

### I. BACKGROUND[1]

Junction is a provider of software and information technology consulting services for businesses. Defendants Ernest, Tucker, and Paul are former Junction employees. During 2003 and 2004, they, along with Steve Guillaume and Laura Guillaume, worked

---

[1] The court assumes familiarity with the factual history of the case set forth in its prior opinion dated January 9, 2007. However, because this is a motion to dismiss the counterclaim, additional facts from the counterclaim have been relied upon when necessary.

1

for Junction developing, marketing and selling Microsoft Axapta software to the multi-channel retail market segment. Countercl. ¶ 8.

Due to several disagreements during the summer of 2004, the Guillaumes, Ernest, Tucker and Paul left Junction and began working for MBS, which commenced operations in September of 2004. Countercl. ¶ 9. MBS focuses on developing and selling Microsoft Axapta to the wholesale distribution market segment. The Guillaumes are the principals of MBS.

In November of 2004, Junction sued MBS in the United States District Court for the District of Colorado, alleging, *inter alia*, that MBS and the Guillaumes misappropriated trade secrets and violated their employment and confidentiality agreements, under which they pledged to protect Junction's trade secrets from disclosure to third parties. *See Junction Management Solutions, LLC v. MBS Dev, Inc.*, 04-cv-2288-PSW-MWJ (D. Colo. filed Nov. 3, 2004) (the "Colorado suit"). In December of 2004, the parties reached a settlement agreement (the "Settlement Agreement"), in which MBS, the Guillaumes, Ernest, Tucker, and Paul agreed not to disclose confidential and proprietary Junction information to third parties, essentially reaffirming the pledges they had made under their employment agreements with Junction.

The Settlement Agreement contains a broad release of "Claims" which includes all "known or unknown" claims or actions. Countercl. ¶ 15; Ex. B ¶ 5. Defendants contend that this provision extinguished all other obligations they had under their employment and confidentiality agreements, save for those that were incorporated into the Settlement Agreement. Countercl. ¶ 17. The Settlement Agreement also contained an agreement that MBS, the Guillaumes, Ernest, Tucker and Paul would not compete

with Junction between November 1, 2004 and November 1, 2005 by engaging in any "Business in the Company Verticals." *Id.* ¶ 18. Defendants contend that this means Junction agreed that defendants were free to compete with Junction after November 1, 2005, the date that the non-compete expired. *Id.* ¶ 21. Defendants allege that they honored the Settlement Agreement by avoiding any "Business in the Company Verticals" until after November 1, 2005.

On February 17, 2006, a California corporation known as Iteration2 announced that it was entering into a partnership with MBS to market the MBS multi-channel distribution software for the Axapta Platform for customers with multi-channel distribution requirements. Junction subsequently filed this suit in the Circuit Court of Cook County against MBS, Ernest, Tucker and Paul, alleging that MBS could not possibly have developed such a product without using and disclosing proprietary Junction information. *See* Junction Compl. ¶ 45. Junction also alleges that Ernest, Tucker and Paul breached their employment and confidentiality agreements with Junction.

Defendants removed the suit to this court and then moved to dismiss for lack of venue. *See* January 9, 2007 Order. Defendants argued that the Colorado Settlement Agreement contained a venue provision that required Junction's suit to be brought in the District of Colorado. At the same time, defendants filed an action before Judge Figa in the Colorado District Court, seeking a declaratory judgment that they were in compliance with the Colorado Settlement Agreement and claiming that Junction had breached the Agreement by failing to bring its new suit in the District of Colorado. On May 23, 2006, Judge Figa held that the venue provision in the Colorado Settlement Agreement did not apply to the suit before this court because Junction's suit did not arise under the Colorado

Settlement Agreement. *See* Tr. Oral Argument May 23, 2006 at 22:1-24:5 ("May 23, 2006 Ruling"). However, Judge Figa made it clear he was not resolving the issue whether the Colorado Settlement Agreement provided defendants with a defense to Junction's claims. *See* Tr. Oral Argument May 23, 2006.

This court relied on Judge Figa's decision and determined that it barred relitigation of the question whether Junction's current claims arise under the settlement agreement and denied defendants' motion to dismiss for lack of venue. *See Junction Solutions, LLC v. MBS DEV, Inc.*, No. 06 C 1632, 2007 WL 114306, *3 (N.D. Ill. Jan. 7, 2007). Accordingly, this court denied defendants' motion to dismiss for lack of venue.

Defendants subsequently filed their answer to Junction's complaint along with a seven-count counterclaim against Junction, which contains the aforementioned allegations. Most of defendants' claims rely on their allegations that Junction brought a bad faith lawsuit against them in violation of the Settlement Agreement in order to harm MBS, rather than for a legitimate reason. *See* Countercl. ¶¶ 25-26. Defendants contend that Junction's lawsuit violates the Settlement Agreement. Countercl. ¶ 24. Defendants also allege that Junction sent letters to Iteration2 and Microsoft Corporation for the purpose of interfering with MBS's relationship with those companies. Countercl. ¶ 30. Further, defendants allege that Junction hired a salesman away from "Vis.align," a partner of MBS, and told the salesman about Junction's lawsuit against MBS without informing him that Junction has no evidence to support its claims. Countercl. ¶ 33.

Defendants make the following counterclaims against Junction: (1) breach of the Colorado Settlement Agreement in the filing of this lawsuit; (2) abuse of process; (3) tortious interference with prospective business advantage; (4) violation of the Lanham

4

Act, 15 U.S.C. § 1125; (5) common law unfair competition; (6) violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq.*; and (7) violation of the Illinois Consumer Fraud and Deceptive Trade Practices Act, 815 ILCS 505/2. Junction has moved to dismiss defendants' counterclaims.

## II. DISCUSSION

### A. Legal Standard

When ruling on a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must accept the factual allegations in the plaintiff's complaint as true. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964 (2007). This is equally applicable to a counterclaim. *See Northern Trust Co. v. Peters,* 69 F.3d 123, 129 (7th Cir. 1995). A complaint need not plead specific facts; it "need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (2007) (per curiam) (quoting *Twombly*, 127 S.Ct. at 1964). However, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombley,* 127 S.Ct. at 1965.

Admittedly, defendants' counterclaim is very bare-bones, and their argument in opposition to Junction's motion did not provide much help to the court. However, a party must meet a high standard in order to have a complaint or counterclaim dismissed for failure to state a claim upon which relief may be granted. With this standard in mind, the court turns to defendants' claims.

### B. Count I

Defendants' first claim is that Junction breached the release provision of the Colorado Settlement Agreement by bringing the current suit. Junction argues that Judge

5

Figa's May 23, 2006 Ruling and this court's subsequent holding collaterally estops defendants from claiming that Junction breached the Settlement Agreement.

For a ruling to have collateral estoppel effect, "four elements must be met: (1) the issue sought to be precluded must be the same as that involved in the prior litigation, (2) the issue must have been actually litigated, (3) the determination of the issue must have been essential to the final judgment, and (4) the party against whom estoppel is invoked must be fully represented in the prior action." *H-D Michigan, Inc. v. Top Quality Service, Inc.*, 496 F.3d 755, 760 (7th Cir. 2007) (internal quotation marks omitted).

Junction's argument is specious at best. The issue Junction seeks to preclude—whether it breached the Settlement Agreement by bringing this lawsuit—is not the same as the issue Judge Figa addressed, which is whether Junction's claims, based on the way Junction styled them, arise out of the Settlement Agreement such that the venue provision therein mandated the suit to be brought in Colorado. The court reads Judge Figa's ruling as determining that Junction's complaint could not be viewed as bringing a suit to enforce the settlement agreement. He did not interpret the release provision or the non-compete provision of Settlement Agreement, which is what would be required to rule on defendants' breach of contract claim. Therefore, Junction's motion to dismiss Count I is denied.

### C. Count II

Defendants' second claim is that Junction filed this lawsuit to improperly prevent lawful competition rather than for the purpose of pursuing any legitimate claim. Such an allegation amounts to an abuse of process claim.

"In order to state a claim for abuse of process, the pleading must allege the existence of an ulterior purpose or motive and some act in the use of legal process not proper in the regular prosecution of the proceedings." *Reed v. Doctor's Associates, Inc.*, 824 N.E.2d 1198, 1206 (Ill. App. Ct. 2005) (citing *Ewert v. Wieboldt Stores, Inc.*, 347 N.E.2d 242, 243 (Ill. 1976)). The mere institution of proceedings, even with a malicious intent or motive, does not alone constitute abuse of process. *See Ewert,* 347 N.E.2d at 243. The defendant must have intended to use the action to accomplish some result that could not be accomplished through the suit itself. *Reed*, 824 N.E.2d at 1206.

Here, defendants clearly meet the first requirement—defendants' counterclaim alleges that Junction filed this lawsuit with an ulterior purpose or motive and that it filed this suit without any evidence to support its claims. Countercl. ¶¶ 38; 30-31. As to the second requirement, defendants appear to be alleging—albeit without much detail—that Junction filed the lawsuit in order to prevent defendants from conducting business. Defendants allege, for example, that Junction has used the pending legal proceedings to hire away a salesman from a partner of MBS and that Junction is using the lawsuit to interfere with MBS's relationship with Iteration2. *See* Countercl. ¶¶ 30, 33. Assuming the truth of these allegations, defendants have adequately pled an abuse of process claim. *See, e.g., Int'l Union of Operating Engineers v. Lowe Excavating Co., Inc.*, No. 98 C 7956, 1999 WL 350650, at *3 (N.D. Ill. May 21, 1999) (Lowe Excavating sufficiently pled a cause of action for abuse of process when its counterclaim alleged that plaintiffs filed their action in the hope of using it to force Lowe Excavating to recognize Local 150 as Lowe Excavating's collective bargaining representative, rather than the Congress of Independent Unions.) Therefore, Junction's motion to dismiss Count II is denied.

### D. Count III

In Count III, defendants claim that Junction has tortiously interfered with defendants' prospective business advantage. The elements of that claim are: "(1) the plaintiff's reasonable expectation of entering into a valid business relationship; (2) the defendant's knowledge of the plaintiff's expectancy; (3) purposeful or intentional interference by the defendant that prevents the plaintiff's legitimate expectancy from ripening into a valid business relationship; and (4) damages to the plaintiff resulting from the interference." *Cromeens, Holloman, Sibert, Inc v. AB Volvo*, 349 F.3d 376, 398 (7th Cir. 2003) (citing *Soderlund Bros., Inc. v. Carrier Corp.,* 663 N.E.2d 1, 7-8 (Ill. App. Ct. 1995)).

Defendants allege that they had a reasonable expectancy of entering into a valid business relationship with Iteration2, that Junction knew of this expectancy, that Junction's intentional and unjustified interference through this lawsuit induced or caused a termination of the expectancy, and that MBS was damaged as a result. Countercl. ¶¶ 40-44. Elsewhere in the counterclaim, defendants also allege that Junction sent letters to Iteration2 and Microsoft Corporation "for the purpose of interfering with MBS Dev's business relationship" with those companies. *Id.* ¶ 30. The court reads the complaint to be alleging two bases for its tortious interference claim: (1) that Junction interfered with MBS's business advantage by filing its "malicious" lawsuit; and (2) that it interfered by engaging in additional harmful conduct such as sending letters that contained false and harmful information about MBS and defendants. The court addresses each basis for this claim in turn.

*1. Liability Based on Filing of Lawsuit*

Under Illinois law, the only cause of action recognized for the wrongful filing of a lawsuit is one for malicious prosecution or abuse of process. *Havoco of America, Ltd. v. Hollobow*, 702 F.2d 643, 647 (7th Cir. 1983) (citing *Lyddon v. Shaw*, 372 N.E.2d 685 (Ill. App. Ct. 1978)). As noted above, defendants have stated a claim for abuse of process in Count II. However, defendants use the allegation that Junction wrongfully filed its lawsuit as a basis for at least two of the five remaining counts. *See* Countercl. ¶ 43 (alleging in Count III that Junction's malicious lawsuit caused a termination of defendants' business expectancy); *id.* ¶ 46 (alleging in Count IV that Junction's malicious lawsuit gives rise to a claim under the Lanham Act). This is not permissible under Illinois law and defendants have cited no binding authority indicating otherwise. As a result, the court grants Junction's motion to dismiss Counts III and IV to the extent those claims rely on the fact that Junction filed this lawsuit.[2] *See Havoco*, 702 F.2d at 647 (Illinois law prohibited plaintiff from basing a cause of action for tortious interference with business opportunity on the wrongful filing of a lawsuit); *PSN Illinois, Inc. v. Ivoclar Vivadent, Inc.*, No. 04 C 7232, 2005 WL 2347209, at *5 (N.D. Ill. Sept. 21, 2005) (dismissing unfair competition claim based on the allegedly improper use of litigation as a means of competition).

The remaining counts (Counts V, VI and VII) do not make clear whether they are based upon Junction's lawsuit or the other actions of Junction, such as sending letters to Iteration2 and Microsoft. Such claims, to the extent defendants are attempting to make them, would also be subject to dismissal for the reasons discussed above. Accordingly, the court does not read those claims to be based on the wrongful filing of a lawsuit.

---

[2] As discussed below, the court also grants Junction's motion to dismiss Count III and Count IV in their entirety but those claims are not dismissed with prejudice.

9

*2. Tortious Interference with a Prospective Business Advantage Claim*

Turning to what remains of Count III, although defendants may base a claim for tortious interference with a prospective business advantage on their allegations that Junction engaged in conduct (such as sending harmful letters to MBS's business partners) which caused Microsoft and Iteration2 to "terminate" its business relationship with MBS, *see* counterclaim ¶ 43, defendants face a second problem. The counterclaim contains contradictory statements regarding the exact nature of MBS's relationship with Microsoft and Iteration2. In one paragraph, for example, defendants allege that "Iteration2 has between $3 million to $4 million of development work available in its pipeline for MBS," the loss of which MBS "will" suffer. Countercl. ¶ 30.

The Supreme Court recently held that "[f]actual allegations must be enough to raise a right to relief above the speculative level" such that there is a "reasonable expectation that discovery will reveal evidence of [the claim or element]." *Twombley,* 127 S.Ct. at 1965; *see EEOC v. Concentra Health Servs., Inc.,* No. 06-3436, ---F.3d ----, 2007 WL 2215764, at *2 (7th Cir. Aug. 3, 2007). A plaintiff may plead himself out of court by including facts in the complaint that undermine his claims. *Concentra Health Servs., Inc.,* 2007 WL 2215764, at *3. Here, the counterclaim contains contradictory allegations regarding whether Junction's alleged conduct caused Microsoft and/or Iteration2 to terminate their relationship with defendants or *may* cause such a termination in the future. If Junction's conduct did not cause harm to defendants, ill-willed as it may have been, it cannot give rise to a claim for tortious interference. Accordingly, the court grants Junction's motion to dismiss Count III. Defendants may amend their counterclaim if they can plead that Junction's alleged conduct caused actual damages to defendants.

### E. Count IV

Defendants' next claim is that Junction violated the Lanham Act, 15 U.S.C. § 1125, by filing this lawsuit[3] and by sending a letter to Iteration2 that contained false statements regarding defendants. The Lanham Act provides:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125. Defendants' claim that Junction made false statements to Iteration2, a major potential business partner of MBS, does not give rise to a claim under the Lanham Act. The Lanham Act is not meant to encompass all communications made by one competitor against another. Rather, the statements must be made in commercial advertising or promotion. *See* 15 U.S.C. § 1125(a)(1)(B); *Sanderson v. Spectrum Labs, Inc.*, 227 F. Supp. 2d 1001, 1008 (N.D. Ind. 2000), aff'd 248 F.3d 1159 (7th Cir. 2000) (To properly plead a violation of the Lanham Act it is necessary to allege, *inter alia,* that the defendant made false or misleading statements about the plaintiff's products in the defendant's commercial advertising or promotion.). Defendants have not cited authority holding otherwise. Accordingly, Count IV is dismissed.

### F. Count V and VI

---

[3] As noted above, this part of the claim has already been dismissed. The filing of a lawsuit against a competitor, even if it is filed maliciously and based on false statements, does not constitute a Lanham Act violation.

In Count V, defendants assert a claim of unfair competition under Illinois common law. Specifically, they claim that Junction made false representations regarding MBS to Iteration2 in an attempt to pass MBS's goods and services off as being those of Junction. Countercl. ¶ 49. In Count VI, defendants assert a claim under the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 501/1, *et seq.*

Neither party has provided the elements of an unfair competition claim or an Illinois Uniform Deceptive Trade Practices Act claim in their briefing, leaving the court to figure out on its own what defendants would have to allege to satisfy their pleading burden. However, the court need not address that issue because Junction makes only one argument against both claims—namely, that they should be dismissed because the counterclaim is devoid of any allegations of false statements made by Junction regarding defendants.

Junction has not identified what rule of law or pleading rule requires defendants to specify the false statements upon which their claims are based. Putting that aside, however, defendants respond in their opposition brief by stating that Junction sent a letter to Iteration2 containing several false statements regarding defendants' business and services.[4] Although this is not clearly laid out in the counterclaim, it is not a new allegation. *See* Countercl. ¶ 30. Because this is the sole ground on which Junction has moved to dismiss these two claims, Junction's motion to dismiss Counts V and VI is denied.[5]

---

[4] Defendants also state that Junction's lawsuit is a basis for these claims, a premise which has been rejected above.

[5] Accordingly, Junction's motion to strike the portions of the complaint that seek injunctive relief is denied. Junction bases its entire argument on the ground that defendants have not stated any claim that entitles them to injunctive relief. Because the Illinois Uniform Deceptive Trade Practices Act provides for injunctive relief, Junction's motion to strike is denied. *See* 815 ILCS 510/3.

## G. Count VII

Defendants' final claim does not fare so well.  Defendants claim that "Junction's lawsuit, falsely accusing Defendants of misappropriating trade secrets, and Junction's letter to MBS Dev's potential business partner, [I]teration2, accusing Defendants of the same" is conduct that violates the Illinois Consumer Fraud and Deceptive Trade Practices Act, 815 ILCS 505/2 *et seq.* ("Consumer Fraud Act").  Def.'s Opp. 13.

The elements of a cause of action for fraud under the Consumer Fraud Act are: (1) a statement by the seller; (2) of an existing or future material fact; (3) that was untrue, without regard to the defendant's knowledge or lack thereof of such untruth; (4) made for the purpose of inducing reliance; (5) on which the victim relied; and (6) that resulted in damage to the victim.  *Tolve v. Ogden Chrysler Plymouth, Inc.*, 755 N.E.2d 536, 540 (Ill. App. Ct. 2001).  The Consumer Fraud Act is a consumer protection statute; this means at minimum that liability arises only if statements are made to consumers, or more generally, to the marketplace.  Defendants' own cited case does not hold otherwise.  *See Pain Prevention Lab, Inc. v. Electronic Waveform Labs, Inc.*, 657 F. Supp. 1486, 1493 (N.D. Ill. 1987) ("deceptive conduct is not actionable under the Consumer Fraud Act unless the conduct involves trade practices addressed to the market generally or otherwise implicates consumer protection concerns.").

Defendants' counterclaim alleges that Junction made misrepresentations in the marketplace regarding MBS's goods and services.  Countercl. ¶ 65.  Defendants' brief clarifies that those misrepresentations are comprised of Junction's lawsuit and Junction's letter to Iteration2, who is MBS's "potential business partner."  Neither is a statement to a consumer or the marketplace in general.  Although a complaint does not need detailed

13

specific facts, a claimant may plead himself out of court by including facts that undermine his claims. *See Concentra Health Servs., Inc.,* 2007 WL 2215764, at *3. A claimant may similarly concede in an admission to the court that he has no claim. Here, defendants have stated that their Consumer Fraud Act claim is based on inactionable statements. As a result, Count VII is dismissed.

### III. CONCLUSION

For the reasons stated above, Junction's motion to dismiss defendants' counterclaim is granted in part and denied in part. Counts III, IV, and VII are dismissed.

ENTER:

_____/s/_____
JOAN B. GOTTSCHALL
United States District Judge

Dated: November 20, 2007